IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES PIPPIN,<br><br>       Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>       Defendant. | CASE NO. 4:24-CV-00552<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**<u>MEMORANDUM OPINION AND ORDER</u>** |

Before the Court is the Defendant JPMorgan Chase Bank, N.A.'s ("Defendant" or "Chase") Motion to Dismiss.  (ECF Docs 15, 15-1, 15-2, 15-3 ("Motion").)  The Motion was fully briefed and is ripe for decision.  (ECF Docs 15, 16, 18.)  In his opposition brief, Plaintiff James Pippin ("Mr. Pippin" or "Plaintiff") requests leave to amend if the Court is inclined to grant Defendant's Motion.  (ECF Doc. 16, p. 9.)  The parties have consented to the magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (ECF Doc. 6).

For the reasons set forth below, the Court **GRANTS** the Motion in part, **DENIES** the Motion in part, declining to exercise supplemental jurisdiction over the remaining state law claims, **DENIES** Plaintiff's request for Leave to Amend the Complaint, and **REMANDS** the remaining state law claims to the state court for further proceedings.

**I.**       **Background**

**A.**       **Procedural History and Relevant Factual Allegations**

Plaintiff filed his initial Complaint with Jury Demand in the Mahoning County, Ohio Court of Common Pleas on February 22, 2024.  (ECF Doc. 1-1, pp. 4-14, Compl.)  On February 25, 2024, Defendant removed the case to Federal Court pursuant to 28 U.S.C. §§ 1331, 1367,

1

1441, and 1446.  (ECF Doc. 1.)  The facts alleged in the Complaint are accepted as true for purposes of this Motion.  Documents attached to Plaintiff's Complaint are also considered as appropriate.  *See Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914, 924 (N.D. Ohio 2009) ("In ruling on a motion to dismiss or motion for judgment on the pleadings, the Court may . . . consider documents attached to, incorporated by, or referred to in the pleadings.").

Chase is a national banking association formed under the laws of the United States. (Compl., ¶ 2.)  Plaintiff is an African American male.  (*Id*. at ¶ 1.)  On June 8, 2020, Plaintiff opened savings and checking accounts at the Chase branch in Winterville, Ohio.  (*Id.*)  To open and maintain his accounts with Chase, Plaintiff was required to adhere to Chase's Deposit Account Agreement ("Account Agreement").  (*Id.*)

1.      **Check Deposit, Account Closure, and Return of Funds**

Mr. Pippin knew Dijonae Stewart ("Ms. Stewart") for three years through his relationship with her father.  (Compl., ¶ 3.)  As a beneficiary of her father's estate, Ms. Stewart received a $22,786.81 check ("the Check") from the estate, payable to her and drawn on the estate's account at M&T Bank.  (*Id.*)  Ms. Stewart had no bank account, so she asked Mr. Pippin to cash the Check for her.  (*Id.*)  In exchange, she agreed to repay a $5,300 debt she owed to Plaintiff. (*Id*. at ¶ 3.)  On or about May 23, 2023, Mr. Pippin and Ms. Stewart went to a Chase branch. (*Id.*)  In the presence of branch manager Charles Worley ("Mr. Worley"), Ms. Stewart endorsed the Check to Mr. Pippin, who deposited the Check into his Chase checking account.  (*Id.*)

Thereafter, Mr. Pippin received a letter from Chase dated June 2, 2023, which advised him that his Chase bank accounts had been closed; the letter was accompanied by a cashier's check in the amount of $8,918.21, payable to Mr. Pippin.  (Compl., ¶ 4.)  The cashier's check represented the balance of Mr. Pippin's savings account and $82.68 from his checking account. (*Id.*)  Mr. Pippin then received a second letter from Chase dated June 7, 2023, which advised him

that his accounts were closed; the letter was accompanied by a second cashier's check for $928, representing the balance of his checking account, payable to Mr. Pippin. (*Id.*)

Mr. Pippin contacted Chase to ask for an explanation of why his accounts were closed without prior notice and to request that Chase send him the $22,786.81 he deposited on May 23, 2023. (Compl., ¶ 5.) He spoke with Mr. Worley, with a Chase escalation official, and with personnel at the Chase branch in Youngstown, Ohio. (*Id.*) On July 5, 2023, Mr. Pippin sent a letter to Stacey Friedman ("Ms. Friedman"), Executive Vice President and General Counsel of Chase. (*Id.*) Ms. Friedman delegated the matter to the Chase Executive Office. (*Id.*) Chase did not transfer the $22,786.81 to Mr. Pippin. (*Id.*)

Mr. Pippin continued to communicate with the Chase Executive Office between July 10, 2023, and November 16, 2023, and continued to request his checking account balance. (Compl., ¶ 6.) Chase did not comply with any of Mr. Pippin's requests to explain why it closed his accounts or to give him the $22,786.81 he had deposited on May 23, 2023. (*Id.*)

M&T Bank sent Chase $22,786.81 per the Check. (Compl., ¶ 7.) Chase did not give these funds to Mr. Pippin. (*Id.*) Instead, Chase sent two cashier's checks, each in the amount of $22,786.81, one payable to Ms. Stewart's father's estate and one payable to Ms. Stewart. (*Id*. at ¶¶ 7, 48; ECF Doc. 1-1, p. 48 (copy of cashier's check made out to Ms. Stewart, dated November 10, 2023).)[1] Mr. Pippin attempted to cash the cashier's check made out to Ms. Stewart using a power of attorney she had granted him. (Compl., ¶ 7.) Chase refused to cash the check. (*Id.*) Since May 23, 2023, Chase has denied Plaintiff use of the $22,786.81 deposit. (*Id*. at ¶ 8.)

---

[1] While ¶ 7 of the Complaint does not mention Plaintiff's attorney, ¶ 48 states that Chase sent Plaintiff's attorney a cashier's check payable to Ms. Stewart. (Compl., ¶ 48.) Nowhere does the Complaint state where Chase sent the check made out to Ms. Stewart's father's estate.

### 2. Relevant Provisions of Account Agreement

Plaintiff references the Account Agreement in his pleadings and attached a copy of the Account Agreement to his Complaint. (ECF Doc. 1-1, pp. 16-43.) The Account Agreement provides that anyone who signs a signature card, submits an account application, or uses services in connection with a Chase deposit account agrees to its terms. (*Id*. at 20.) Section III of the Account Agreement, governing checking and savings accounts, provides that Chase reserves the right to place a hold on deposits if it has any reason to believe a check is unauthorized, was procured by fraud, or should not have been/may not be paid for any other reason. (*Id*. at 23.) Section III also states: "We may refuse a deposit, or part of a deposit, at any time. We also may refuse a deposit after initially accepting it. We can reverse any amount we have added to your balance for a deposited check . . . We will not be liable to you for refusing a deposit [.]" (*Id.*)

With regard to the availability of deposited funds, Section IV of the Account Agreement provides that checks are generally available one or two business days after a deposit. (*Id*. at 32.) However, that section also states that Chase may delay availability of a check's full amount up to seven business days under certain circumstances, including when an account holder deposits checks totaling more than $5,525 in a single day. (*Id*.)

Finally, the Account Agreement allows either Chase or the account holder to close an account without notice and for any reason. (*Id*. at 36.) If Chase closes an account, it must "return the balance less any fees, claims, setoffs, or other amounts if the balance is greater than $1." (*Id.*) After closing an account, Chase maintains no obligation to accept deposits. (*Id.*)

### 3. Causes of Action

Mr. Pippin asserts eight causes of actions in the Complaint. In Count I, he alleges that Chase unlawfully discriminated against him under 42 U.S.C.A. § 1981 (West), 1988. (*Id*. at ¶¶ 9-14.)

4

In Count II, he alleges that Chase violated the Expedited Funds Availability Act ("EFAA") at 12 U.S.C.A. § 4001 (West) et seq by refusing to allow him to withdraw $22,786.81 from his account within seven days of it being deposited. (*Id*. at ¶¶ 15-19.)

In Count III, he alleges breach of contract, arguing that Chase breached the Account Agreement when it closed his bank accounts without notice and did not write him a check for the $22,786.81 deposited on May 23, 2023. (*Id*. at ¶ 25.)

In Count IV, he alleges unjust enrichment based on Chase not allowing him access to the $22,786.81. (*Id*. at ¶¶ 26-31.)

In Count V, he alleges that Chase was negligent by failing to act as a "prudent and rational banker," and caused him damages. (*Id*. at ¶¶ 31[2]-35.)

In Count VI, he alleges that Chase converted the funds in his account by wrongfully refusing his requests to withdraw available funds. (*Id*. at ¶¶ 37-38.)

In Count VII, titled "Mental Anxiety," Mr. Pippin alleges that Chase "intentionally or recklessly" caused him mental anxiety and that Chase's conduct was "so extreme or outrageous as to go beyond all possible bounds of decency." (*Id*. at ¶¶ 42, 43.)

In Count VIII, he alleges that Chase violated the Uniform Commercial Code as codified at Ohio Rev. Code Ann. § 1303.31, 1303.52 (West). (*Id*. at ¶¶ 47-50.)

## II. Standard of Review

Under Federal Rules of Civil Procedure 12(b)(6), the Court may dismiss a claim when a party fails to plead facts on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[2] The Complaint contains two paragraphs numbered "31."

5

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff is not required to include "detailed factual allegations," but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted).

This Court "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018) (citation omitted). However, while "we must accept all well-pleaded factual allegations in the complaint as true, we need not 'accept as true a legal conclusion couched as a factual allegation.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Whittiker*, 605 F. Supp. 2d at 924. "[A]lthough a court must generally accept all well-pled facts as true, if a document referenced in the complaint . . . contradicts the factual allegations in the complaint, the document 'trumps the allegations.'" *Amir v. AmGuard Ins. Co.*, 606 F. Supp. 3d 653, 664 (E.D. Mich. 2022) (citing *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)). "For a document to contradict the complaint, it must 'utterly discredit' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020) (citing *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 755 (6th Cir. 2020) (quoting *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386–87 (6th Cir. 2017))).

6

### III. Discussion

**A.     Plaintiff Has Abandoned Counts I, III, VI, and VIII**

Defendant argues that Plaintiff abandoned Counts I, III, VI, and VIII of the Complaint by failing to present arguments in opposition to dismissal in his brief in opposition. (ECF Doc. 18, p. 3.) The Court agrees. It is well settled that a plaintiff abandons a claim when he or she fails to oppose a motion to dismiss that claim. *Doe v. Bredesen*, 507 F.3d 998, 1007–08 (6th Cir. 2007) (upholding district court's finding that plaintiff abandoned certain claims by failing to defend them in his brief in opposition to defendant's motion to dismiss) (citations omitted); *Ullmo v. Ohio Tpk. & Infrastructure Comm'n*, 126 F. Supp. 3d 910, 919 (N.D. Ohio 2015) (finding plaintiff abandoned claim when he failed to respond to defendant's motion to dismiss) (citing *Weatherby v. Fed. Express*, 454 F. App'x 480, 490 (6th Cir. 2012)); *see Travelers Prop. Cas. Co. of Am. v. Dayton Freight Lines, Inc.*, No. 5:22-CV-1550, 2023 WL 2500174, at *2 (N.D. Ohio Mar. 14, 2023) (collecting cases).

Because Plaintiff's opposition brief fails to respond to Defendant's arguments seeking dismissal of Counts I, III, VI, and VIII (ECF Docs 15, 16), the Court finds Plaintiff has abandoned those claims and **GRANTS** the Motion as to Counts I, III, VI, and VIII.

**B.     Plaintiff Has Not Sufficiently Alleged a Violation of EFAA (Count II)**

Chase asserts that Plaintiff's claims based on the EFAA must be dismissed because Chase complied with the EFAA, and because Chase had a right under the EFAA to reject the Check. (ECF Doc. 15, pp. 23-24.) Plaintiff argues that Defendant's Motion presents a defense of compliance with the EFAA rather than a legal argument about sufficiency of the pleadings and therefore, Count II "satisfied the notice and grounds requirements of Rule 8." (ECF Doc. 16, pp. 3-4.) He further asserts that he is entitled to offer evidence to support his claim. (*Id*. at 4.)

Plaintiff states in Count II that he was entitled to withdraw funds from his Chase checking account and receive funds upon closure of his accounts, and that Chase unlawfully denied his numerous demands for access to and/or withdrawal of "available funds." (Compl. ¶¶ 16-17.) He also alleges that Chase refused to permit him to withdraw $22,786.81 within seven business days from May 23, 2023, the date he deposited the Check. (*Id*. at ¶ 18.) In support, he alleges that Chase closed his accounts, sent him a letter notifying him of the closure, and sent him checks for the balance of his checking and savings accounts—not including the $22,786.81—on June 2, 2023. (*Id*. at ¶ 4.) He further alleges that Chase prepared and sent cashier's checks for $22,786.81, payable to Ms. Stewart and to her father's estate, to Plaintiff's attorney in November 2023. (*Id*. at ¶¶ 7, 48; ECF Doc. 1-1, p. 48.)

In opposition to dismissal, Plaintiff argues that his Complaint meets the "simplified pleading standard" in the Federal Rules because he "present[ed] the EFAA in connection with Chase's untimely payment." (*Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).) However, Plaintiff does not identify specific provisions of the EFAA that he alleges were violated. (*See* Compl. ¶¶ 15-19.) Rather, he states generally that Chase acted "unlawfully" and cites the EFAA in the title of Count II. (*Id*. at ¶ 17.) It is not enough for Plaintiff to broadly allege that Chase violated an unspecified provision in a lengthy statute and hope he finds evidence of this on discovery. *See Northampton Rest. Grp., Inc. v. Firstmerit Bank, N.A.*, No. 5:09CV02630, 2010 WL 3069494, at *6 (N.D. Ohio Aug. 3, 2010), *aff'd,* 492 F. App'x 518 (6th Cir. 2012) (finding that plaintiffs failed to state an EFAA claim where they made conclusory allegations that the defendant violated the EFAA and provided a "laundry list" of regulations without explaining the alleged violations); *see also Twombly*, 550 U.S. at 561-62 (rejecting the proposition that "a wholly conclusory statement" of a claim "would survive a motion to dismiss

whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery") (internal quotations and alterations omitted). Rather, Plaintiff must allege specific facts that, if true, allow an inference that Chase violated the EFAA. *See Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). He has not done so.

The EFAA is a 1987 law that "requires banks to make deposited funds available for withdrawal within specified time periods, subject to stated exceptions." *Bank One Chicago, N.A. v. Midwest Bank & Trust Co.,* 516 U.S. 264, 266 (1996). "The EFAA concerns itself *exclusively* with making deposited funds available for withdrawal in a timely manner." *Northampton Rest. Grp., Inc.*, 2010 WL 3069494, at *6 (emphasis added). It explicitly provides that "[n]o provision of this chapter shall be construed as […] (2) affecting a depository institution's right to accept or reject a check for deposit." 12 U.S.C. § 4006(c)(2)(A).

Mr. Pippin fails to explain how Chase's actions violated the EFAA. He alludes to the EFAA's timeliness requirements when he states that Chase failed to make the $22,786.81 available to him within seven days. (*Id*. at ¶ 18.) But the seven-day timeline is not stated in the EFAA or accompanying regulations. *See* 12 U.S.C. §§ 4002(a)(2) (providing that generally, checks should become available within one business day); 12 C.F.R. § 229.10(c) (same); 12 C.F.R. § 229.13(b) (making an exception for the deposit of checks in excess of $5,525 on a single banking day but not setting a deadline). Rather, the Account Agreement sets a seven-business-day deadline for large checks to become available. (ECF Doc., 1-1, p. 32.) Seven business days from May 23, 2023, was June 2, 2023, the date Chase closed Mr. Pippin's accounts. As the EFAA permits banks to delay deposits of checks in excess $5,525 without setting an outer time limit, Plaintiff has not sufficiently alleged that Chase violated the EFAA by delaying availability of the $22,786.81 for more than seven days.

9

Similarly, Plaintiff does not explain how Chase's refusal to ever make funds from the Check available to him violated the EFAA. (Compl. ¶¶ 16-17.) Chase's decisions to ultimately reject the Check, to attempt to the return the funds to Ms. Stewart or her father's estate, and to close Mr. Pippin's accounts without notice do not implicate the EFAA. The EFAA "exclusively" addresses the timely availability of check funds for withdrawal and does not abridge the right of any financial institution to reject a deposit. *Northampton Rest. Grp., Inc.*, 2010 WL 3069494 at *6; 12 U.S.C. § 4006(c)(2)(A). Plaintiff does not point to any specific provision of the EFAA that Chase violated by closing his account and rejecting the Check. Thus, he has not plausibly alleged that Chase violated the EFAA by taking the alleged actions. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Plaintiff does allege that he "received no notice regarding any exception permitting a later availability of the" $22,786.81 deposit. (Compl., ¶ 8 (incorporated into Count II by ¶ 15).) But even if the Court interpreted this allegation to mean that Plaintiff alleged a violation of 12 U.S.C. §§ 4003(f)(1), (2) and 12 C.F.R. § 229.13(g)(1)(i), which govern notice of the delayed availability of check deposits, documents attached to the Complaint "utterly discredit" any assertion that Plaintiff did not receive notice of a potential hold on the $22,786.81 deposit. *In re Flint Water Cases*, 960 F.3d at 329. Plaintiff attached a copy of the May 23, 2023 Transaction Receipt to his Complaint. (ECF Doc. 1-1, p. 50.) This receipt satisfies the EFAA notice requirements for delaying availability of a large deposit. It includes a number code for Plaintiff's account, the date of the deposit, the amount of the deposit, the reason the exception was invoked, and the date when the funds would be available for withdrawal. *See* 12 C.F.R. § 229.13(g)(1)(i). Given that Chase provided Plaintiff the requisite notice that it would be delaying availability of the Check, its initial actions regarding the Check did not violate the EFAA. *Amir*, 606 F. Supp.

10

3d at 664 ("if a document referenced in the complaint . . . contradicts the factual allegations in the complaint, the document trumps the allegations.") (citations omitted).

For the reasons set forth above, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted under the EFAA because he failed to allege sufficient facts which, if taken as true, would allow the Court to infer that Chase violated the EFAA. Accordingly, Defendant's Motion is **GRANTED** as to Count II of the Complaint.

### C. Court Declines to Exercise Supplemental Jurisdiction Over Remaining State Law Claims (Counts IV, V, and VII)

Mr. Pippin's remaining three claims sound in Ohio law. Count IV alleges unjust enrichment. (Compl., ¶¶ 26-31.) Count V alleges negligence. (*Id.* at ¶¶ 31-35.) Count VII alleges that Chase "intentionally or recklessly" caused him mental anxiety. (*Id.* at ¶¶ 42-43.)

Federal courts may decline to exercise supplemental jurisdiction over state law claims when all claims over which the court originally had jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). District courts have "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Emlyn Coal Processing of Minnesota, LLC v. Xinergy Corp.*, No. 6:09-CV-128-HAI, 2011 WL 1988249, at *10 (E.D. Ky. May 19, 2011) (internal quotation marks omitted) (quoting *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996))). The Court's decision to exercise that discretion depends on "judicial economy, convenience, fairness, and comity." *Musson Theatrical, Inc.*, 89 F.3d at 1254 (quoting *Carnegie Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)).

"When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims or remanding them to state court if the action was removed." *Id.* at 1254–55. Where the federal claim is dismissed under Rule 12(b)(6), as is the

11

case here, "there is a strong presumption in favor of dismissing supplemental claims" in the absence of "unusual circumstances" such as prejudice to the plaintiff. *Id.* at 1255 (citing *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir. 1975)). Other examples of "unusual circumstances" include situations where proceedings have been pending for many years in federal court, where extensive discovery has been completed, and where the state law claims are easily disposable or "patently frivolous." *Id.* at 1255–56.

This Court has dismissed Mr. Pippin's EFAA and racial discrimination claims, the only claims over which it had federal question jurisdiction. Thus, there is a "strong presumption" in favor of dismissing the state law claims. *Id*. at 1254; *Rogers v. L'Arche Cleveland*, No. 1:18 CV 1365, 2019 WL 285955, at *4 (N.D. Ohio Jan. 22, 2019) (applying *Musson* to dismiss state law claims after dismissing all federal claims).

The balance of considerations also weighs in favor of remanding Plaintiff's state law claims. The present litigation is at an early stage; Chase has not yet answered the complaint. *See e.g.*, *Norris v. Glassdoor, Inc.*, No. 2:17-CV-00791, 2018 WL 3417111, at *7 (S.D. Ohio July 13, 2018) (declining to exercise supplemental jurisdiction over state claims where all federal claims had been dismissed and defendant had not yet filed its Answer); *Fambrough-McCoy v. White Castle Sys., Inc.*, No. 1:17-CV-00019, 2017 WL 3085685, at *5 (S.D. Ohio July 20, 2017) (same). While the Court and the Parties have set a discovery schedule, (ECF Doc. 14), the process is ongoing, and nothing prevents the Parties from using the information learned so far in subsequent state-court proceedings. Additionally, the Court finds that the resolution of at least one of the remaining state claims is not so clear as to make it "patently frivolous." *Musson Theatrical, Inc.*, 89 F.3d at 1255 (citing *Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1251 (7th Cir. 1994) (finding retention of state law claims appropriate where "it is absolutely clear

12

how the pendent claims can be decided.")). Rather than engage in piecemeal exercise of supplemental jurisdiction, the principals of judicial economy, comity, and convenience support remand of the remaining state law claims for the state court to analyze in the first instance. *See id.* at 1254 (quoting *Cohill,* 484 U.S. at 350). Finally, the Court notes that nothing in the record suggests Mr. Pippin would face prejudice if required to pursue his remaining claims in state court—indeed, that was apparently his first choice. (*See* ECF Doc. 1 (Notice of Removal).)

For the reasons set forth above, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and will remand Counts IV, V, and VII to the state court.

**D.      Plaintiff's Contingent Request for Leave to File an Amended Complaint is Denied**

Having granted the Motion to Dismiss in part, this Court must also consider Plaintiff's contingent request for leave to amend the Complaint before remanding the remaining state law claims to the state court. (ECF Doc. 16, pp. 9-10.)

Plaintiff argues that this Court should allow him to amend his Complaint if it grants the Motion in light of the "judicial preference for deciding cases on the merits" and "because the amendments are not known until the decision on the dismissal request is rendered." (*Id*. at 9 (citing Fed. R. Civ. P. 15(a) and *Iqbal*, 556 U.S. at 687).) Defendant responds that a request for leave to amend which gives "no indication of the particular grounds on which amendment is sought" should be denied. (ECF Doc. 18, pp. 14-15.) Defendant further asserts that Plaintiff is "'not entitled to an advisory opinion . . . informing him of the deficiencies in the complaint.'" (*Id*. at 15 (quoting *La. Sch. Emps.' Ret. Sys. V. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000))).

The Federal Rules provide that leave to amend should be freely given when justice requires. Fed. R. Civ. P. 15(a)(2). However, a court need not grant leave to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

13

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022), *cert. denied,* 143 S. Ct. 527 (2022) (citations omitted).

A party seeking to amend his complaint, "[n]ormally . . . should attach a copy of the amended complaint." *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014). Further, the Sixth Circuit has explained that "a request for leave to amend, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." *Alexander v. Eagle Mfg. Co., LLC*, 714 F. App'x 504, 511 (6th Cir. 2017) (quoting *La. Sch. Emps.' Ret. Sys.*, 622 F.3d at 486 (quoting *Begala*, 214 F.3d at 784)) (brackets and quotations in original omitted); *see also Ayer v. Cmty. Mercy Health Partners*, No. 3:18-CV-00327, 2019 WL 1902520, at *5 (S.D. Ohio Apr. 29, 2019).

Here, Plaintiff has not sought leave to amend through a formal motion supported by legal authority, nor has he provided this Court or Defendant with a proposed amended complaint. Instead, he has made a brief contingent request for leave to amend that lacks detail and supporting legal authority. He does not even provide general descriptions of the type of amendments he would make; rather, he essentially asks the Court to instruct him as to how his complaint is deficient before making any amendments. (ECF Doc. 16, p. 9.) As Defendant correctly points out, Plaintiff is not "entitled to an advisory opinion from the Court informing [him] of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *La. Sch. Emps.' Ret. Sys.*, 622 F.3d at 486 (quoting *Begala*, 214 F.3d at 784).

For the reasons set forth above, the Court denies Plaintiff's contingent request for leave to amend Counts I, II, III, VI, and VIII. As the Court has declined to exercise supplemental

jurisdiction over the state law claims that were not dismissed, Plaintiff's request for leave to amend Counts IV, VI, and VII is moot.

## IV.     Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendant's motion to dismiss in part, and **DENIES** in part, declining to exercise supplemental jurisdiction over the state law claims that Plaintiff did not waive. Counts I, II, III, VI, and VIII are **DISMISSED**. The Court **DENIES** Plaintiff's request for Leave to Amend the Complaint. Counts IV, V, and VII are **REMANDED** to state court for further proceedings.


Dated: December 10, 2024

>     /s Amanda M. Knapp
>     AMANDA M. KNAPP
>     United States Magistrate Judge